IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | NO. 3-06-CR-0195-G |
| | § | NO. 3-08-CV-1352-G |
| LAURA WALKER BERNARD | § | |
| | § | |
| Defendant. | § | |

**FINDINGS AND RECOMMENDATION OF THE**
**UNITED STATES MAGISTRATE JUDGE**

Defendant Laura Walker Bernard, a federal prisoner, has filed a motion to correct, vacate, or set aside her sentence pursuant to 28 U.S.C. § 2255. For the reasons stated herein, the motion should be denied.

I.

Defendant pled guilty to unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) & 924(a)(2). Punishment was assessed at 97 months confinement followed by a two-year term of supervised release. Although defendant timely appealed her conviction and sentence, she later dismissed the appeal on the advice of counsel. *United States v. Bernard*, No. 07-10158 (5th Cir. Aug. 24, 2007). Defendant now seeks post-conviction relief under 28 U.S.C. § 2255.

II.

In two broad grounds for relief, defendant criticizes various aspects of her legal representation from the entry of her guilty plea to the dismissal of her appeal. Succinctly stated, defendant contends that: (1) her guilty plea was involuntary because defense counsel misrepresented her criminal history score and the likely range of punishment; (2) counsel failed to object at

sentencing to the denial of a three-level reduction for acceptance of responsibility and to the calculation of her criminal history score; and (3) she was coerced and intimidated by counsel into dismissing her appeal.

A.

On June 21, 2006, defendant was indicted by a federal grand jury on one count of unlawful possession of a firearm by a convicted felon. At her initial appearance before a magistrate judge, the court appointed the Federal Public Defender ("FPD") to represent defendant. Shortly thereafter, Assistant FPD Douglas Morris was assigned to the case. In a letter to defendant dated September 1, 2006, Morris stated:

> As to the potential sentencing range in your case--if you decide to plead "guilty" and forgo any suppression hearing--you currently have a Criminal History Category of II (nearly all of your prior convictions are too old to warrant criminal history points and your current sentence for possession of a controlled substance is related to the instant federal offense), and you have a gross offense-level of 20. This gives you a sentence range of 37-46 months imprisonment. If you receive a reduction for acceptance of responsibility, your net offense-level will be 17, which will give you a sentence range of 27-33 months imprisonment. There is a risk that you might be susceptible to cross reference to the section of the Sentencing Guidelines that addresses drug cases, but I do not think that this will impact your range of punishment.

(Def. Mot., Exh. 1). Relying on this assessment of her likely punishment, defendant agreed to plead guilty to the gun charge. (*Id.*, Exh. 8 at 1-2, ¶¶ 4-5).

Defendant appeared in court for rearraignment on September 26, 2006. Before accepting her guilty plea, the judge read the indictment and had the prosecutor summarize the range of punishment. (*See* Rearraign. Tr. at 6-7). Specifically, defendant was told that the maximum penalty for the offense was 10 years in prison, a fine not to exceed $250,000 or twice any pecuniary gain to the defendant or loss to the victim, a supervised release term of not more than three years, and a $100

mandatory special assessment. (*Id.* at 7). Defendant testified that she understood the maximum penalties prescribed by law upon conviction. (*Id.*). With respect to the calculation of her sentence, the judge and defendant engaged in the following discussion:

> THE COURT: Do you understand that I will probably not be able to determine what guidelines apply to your case until after a presentence report has been prepared and both you and the Government have had an opportunity to review a copy of that report and to challenge the accuracy of the facts stated therein?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And do you understand that even after it has been determined what guideline applies to your case, I would still have the authority in some circumstances to impose a sentence that is more severe or less severe than the sentence called for by the Guidelines?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: And do you understand that as a result of a decision last year by the Supreme Court of the United States in a case called United States against Booker, that the application of those guidelines is now effectively advisory rather than mandatory?
>
> THE DEFENDANT: Yes, sir.
>
> * * * *
>
> THE COURT: And do you understand that if the sentence you receive in this case is more severe than you now expect, you will still be bound by that plea and have no right to withdraw that plea?
>
> THE DEFENDANT: Yes, sir.

(*Id.* at 8-9). Later in the hearing, the judge inquired whether anyone had forced the defendant to plead guilty or made any promise to induce her plea. (*Id.* at 9-10). Defendant responded, "No, sir." (*Id.*). The judge accepted her guilty plea and scheduled a sentencing hearing for December 19, 2006. (*Id.* at 11).

Prior to sentencing, a federal probation officer prepared a Presentence Investigation Report ("PSI"). Although defense counsel had predicted a base offense level of 20 on the assumption that defendant had only one prior felony drug conviction, the PSI indicated that defendant had two prior felony drug convictions, which made her base offense level 24. (*See* Gov't Resp. App., Exh. C at 4, ¶ 16, *citing* U.S.S.G. § 2K2.1(a)(2)). In addition, the probation officer recommended a four-level increase because the firearm was located in close proximity to methamphetamine and other evidence of drug activity. (*Id.*, Exh. C at 4, ¶ 17, *citing* U.S.S.G. § 2K2.1(b)(6)). With a three-level reduction for acceptance of responsibility, (*see id.*, Exh. C at 4, ¶ 21, *citing* U.S.S.G. § 3E1.1), the resulting offense level under the guidelines was 25, not 17 as counsel had told defendant. The probation officer also gave defendant a criminal history score of 6, which placed her in Criminal History Category III, because of her two prior felony drug convictions resulting in prison sentences of one-year or more. (*Id.*, Exh. C at 6-7, ¶¶ 27-28, *citing* U.S.S.G. § 4A1.1(a)).[1] Based on a total offense level of 25 and a criminal history score of 6, the probation officer determined that the applicable range of punishment was 70-87 months in prison. (*Id.*, Exh. C at 18, *citing* U.S.S.G., Table).

In an addendum to the PSI, the probation officer notified the court that defendant was no longer eligible for a three-level reduction for acceptance of responsibility because she tested positive for methamphetamine after pleading guilty to the instant offense. (*Id.* at 19, *citing* U.S.S.G. § 3E1.1, app. note 3). Without that adjustment, defendant's total offense level increased to 28, and the range of punishment increased to 97-120 months in prison. (*Id.* at 20, *citing* U.S.S.G., Table). Neither

---

[1] The original PSI gave defendant a criminal history score of 8, which placed her in Criminal History Category IV, based on a third felony drug conviction for which she was sentenced to more than one year in prison. (*See* Def. Resp. App., Exh. C at 8, ¶ 29). However, the same conduct giving rise to that drug offense also was considered by the probation officer in recommending a four-level increase in the base offense level under U.S.S.G. § 2K2.1(b)(6). *See* U.S.S.G. § 4A1.2, app. note 1 ("prior sentence" for purposes of determining criminal history does not include a sentence for conduct that is part of the instant offense). Upon realizing this error, the probation officer corrected the PSI to reflect a criminal history score of 6 and a Criminal History Category of III. (*See* Def. Resp. App., Exh. C at 17).

defendant nor the government objected to the PSI or the addendum. (Sent. Tr. at 2). At sentencing, the judge adopted the PSI and sentenced defendant at the bottom end of the guideline range to 97 months in prison. (*Id.* at 28). Although defendant timely appealed her conviction and sentence, she agreed to dismiss the appeal after her appellate lawyer, Assistant FPD Jason Hawkins, advised that even if she prevailed on appeal, which was unlikely, she could be resentenced as an Armed Career Criminal and face a potential sentence of 180 months in prison. (*See* Def. Mot., Exh. 7 & Exh. 8 at 2-3, ¶ 11-16).

B.

The threshold issue presented by defendant in her section 2255 motion involves the validity of her guilty plea. It is axiomatic that a guilty plea is valid only if entered voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." *Bradshaw v. Stumpf*, 545 U.S. 175, 183, 125 S.Ct. 2398, 2405, 162 L.Ed.2d 143 (2005), *citing Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970). A plea is intelligently made when the defendant has "real notice of the true nature of the charge against [her]." *Bousley v. United States*, 523 U.S. 614, 618, 118 S.Ct. 1604, 1609, 140 L.Ed.2d 828 (1998), *quoting Smith v. O'Grady*, 312 U.S. 329, 334, 61 S.Ct. 572, 574, 85 L.Ed. 859 (1941). A plea is "voluntary" if it does not result from force, threats, improper promises, misrepresentations, or coercion. *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997). The Fifth Circuit has identified three core concerns in a guilty plea proceeding: (1) the absence of coercion; (2) a full understanding of the charges; and (3) a realistic appreciation of the consequences of the plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993). Compliance with the admonishments required under Rule 11 of the Federal Rules of Criminal Procedure provides "prophylactic protection for the constitutional rights involved in the entry of guilty pleas." *See id.* at 627.

1.

A guilty plea is open to attack on the ground that counsel did not provide the defendant with reasonably competent advice. *See Cuyler v. Sullivan*, 446 U.S. 335, 344, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980) (citing cases). "One of the most important duties of an attorney representing a criminal defendant is advising the defendant about whether [she] should plead guilty." *United States v. Herrera*, 412 F.3d 577, 580 (5th Cir. 2005), *citing Reed v. United States*, 354 F.2d 227, 229 (5th Cir. 1965). An attorney discharges this duty by informing the defendant of the relevant circumstances and the likely consequences of a plea. *Id.*, *citing Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995). Advising a defendant about her potential exposure under the sentencing guidelines is necessarily part of this process. *Id.* However, an erroneous estimate by counsel as to the length of sentence, standing alone, does not vitiate an otherwise voluntary guilty plea. *See Beckham v. Wainwright*, 639 F.2d 262, 265 (5th Cir. 1981). As noted by the Fifth Circuit:

> A guilty plea is not rendered involuntary by the defendant's mere subjective understanding that [she] would receive a lesser sentence. In other words, if the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor or defense counsel, the guilty plea stands.
>
> Likewise, a guilty plea is not rendered involuntary because the defendant's misunderstanding was based on defense counsel's inaccurate *prediction* that a lesser sentence would be imposed.

*Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir.) (internal citations omitted) (emphasis in original), *cert. denied*, 123 S.Ct. 286 (2002), *abrog. on other grounds*, *Glover v. United States*, 531 U.S. 198, 203, 121 S.Ct. 696, 700, 148 L.Ed.2d 604 (2001). Only an actual promise by counsel that a lesser sentence will be imposed, as opposed to an erroneous prediction of leniency, renders a guilty plea involuntary. *See, e.g. Harmason v. Smith*, 888 F.2d 1527, 1532 (5th Cir. 1989); *United States v. Stumpf*, 827 F.2d 1027, 1030 (5th Cir. 1987).

The record in this case shows that Assistant FPD Douglas Morris mistakenly advised defendant that she was in Criminal History Category II because "nearly all of [her] prior convictions are too old to warrant criminal history points[.]" (Def. Mot., Exh. 1). Morris also failed to recognize that defendant had two prior felony drug convictions, which resulted in a four-point increase in her base offense level, and did not consider a possible four-point increase in the total offense level due to the proximity of the firearm to illegal drugs. Based on this misinformation, Morris told defendant that her sentencing range was 37-46 months in prison, or 27-33 months if she received a three-level reduction for acceptance of responsibility. (*Id.*). In fact, the punishment range in this case was 97-121 months in prison. Had defendant not continued her drug use after pleading guilty and received a three-level reduction for acceptance of responsibility as originally recommended by the probation officer, her punishment range would have been 70-87 months, which still was 33-41 months more than the maximum range her attorney predicted.

Although defense counsel misadvised defendant about her potential exposure under the sentencing guidelines, this erroneous advice does not render her guilty plea involuntary. Significantly, Morris never *promised* defendant a particular sentence if she pled guilty. Rather, he only *predicted* a likely range of punishment based on good faith, albeit mistaken, assumptions about her criminal history. Moreover, the court admonished defendant before accepting her guilty plea as to the statutory maximum punishment and the effect of the sentencing guidelines. Defendant was told that the maximum punishment upon conviction was 10 years confinement, which is 23 months less than the sentence she ultimately received. The judge also informed defendant that he would not be able to determine what guidelines apply in this case until after he reviewed the PSI. Defendant indicated that she understood her sentence exposure and the effect of the guidelines. Perhaps most

importantly, defendant told the judge that no one had forced her to plead guilty or made any promises to induce her plea. In light of this sworn testimony, defendant cannot show that her guilty plea was the result of assurances by defense counsel regarding her offense level, criminal history score, and sentence exposure. *See United States v. Casey*, No. 3-04-CV-2347-D, 2007 WL 2706269 at *4-5 (N.D. Tex. Sept. 17, 2007) (failure of defense counsel to investigate criminal history before estimating range of punishment under the sentencing guidelines did not render guilty plea involuntary where court properly admonished defendant under Rule 11 before accepting the plea).[2]

C.

Defendant further contends that she received ineffective assistance of counsel because her attorney failed to object at sentencing to the denial of a three-level reduction for acceptance of responsibility and to the calculation of her criminal history score. The Sixth Amendment to the United States Constitution guarantees a defendant reasonably effective assistance of counsel at all critical stages of a criminal proceeding. *See Cuyler*, 100 S.Ct. at 1716. In order to obtain post-conviction relief due to ineffective assistance of counsel during the punishment phase of a non-capital case, a defendant must satisfy the two-prong test established in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the defendant must demonstrate that counsel's performance fell below an objective standard of reasonable professional service. *Id.*, 104 S.Ct. at 2064-65. Second, the defendant must establish prejudice--that she was subjected to increased jail time due to the deficient performance of her attorney. *See United States v. Grammas*, 376 F.3d 433, 439 (5th Cir. 2004), *citing Glover*, 121 S.Ct. at 700.

---

[2] Defendant cites several Fifth Circuit decisions, including *Herrera*, for the proposition that "erroneous advice" or "underestimation of sentencing exposure" constitutes ineffective assistance of counsel in the habeas context. (*See* Def. Reply Br. at 2 & n.5). However, those cases involved situations where defense counsel made a definitive statement as to the maximum sentence a defendant faced if he went to trial. Where, as here, an attorney mistakenly predicts a potential sentence before a defendant pleads guilty, the court has the opportunity to correct any misinformation when it conducts the Rule 11 plea colloquy. *See Casey*, 2007 WL 2706269 at *5 n.3.

Contrary to defendant's assertions, there was no basis for counsel to object to the denial of a three-level reduction for acceptance of responsibility. Although the entry of a guilty plea prior to trial is significant evidence of acceptance of responsibility, it does not entitle a defendant to a reduction as a matter of right. *See United States v. Shipley*, 963 F.2d 56, 58 (5th Cir.), *cert. denied*, 113 S.Ct. 348 (1992), *citing* U.S.S.G. § 3E1.1(b). A district court may properly deny a reduction for acceptance of responsibility where the defendant engages in criminal conduct while on pretrial release. *See United States v. Hooten*, 942 F.2d 878, 883 (5th Cir. 1991); *United States v. Watkins*, 911 F.2d 983, 985 (5th Cir. 1990). This includes using a controlled substance or testing positive for illegal drugs. *See United States v. Rickett*, 89 F.3d 224, 227 (5th Cir.), *cert. denied*, 117 S.Ct. 499 (1996); *Watkins*, 911 F.2d at 985. Because defendant tested positive for methamphetamine while on pretrial release, counsel was not ineffective for failing to object to the PSI addendum recommending against a three-level reduction for acceptance of responsibility.

Nor was counsel ineffective for failing to object to defendant's criminal history score. Apparently, defendant believes that her two prior convictions for possession with intent to distribute methamphetamine are related and should not be counted as separate offenses. *See* U.S.S.G. § 4A1.1(a)(2).[3] However, the PSI reflects that defendant was arrested on the second drug charge while on pretrial release in the first drug case. (*See* Gov't Resp. App., Exh. C at 6, ¶ 27). Under the sentencing guidelines in effect at the time, prior offenses separated by an intervening arrest are not considered "related" and should be counted separately when calculating a criminal history score. *See*

---

[3] In determining a criminal history score, three points are added for each prior sentence of imprisonment exceeding one year and one month. *See* U.S.S.G. § 4A1.1(a). Prior sentences imposed in unrelated cases are counted separately, whereas prior sentences imposed in related cases are treated as one sentence. *Id.* § 4A1.1(a)(2).

U.S.S.G. § 4A1.2, app. note 3, *struck by* U.S.S.G. amend. 709 (Nov. 1, 2007).[4] Counsel was not required to make this frivolous objection at sentencing. *See United States v. Plumb*, No. 1:03-CR-95-01, 2005 WL 1861963 at *2-3 (W.D. Mich. Aug. 4, 2005) (counsel was not ineffective for failing to object that prior offenses, separated by intervening arrest, were separate offenses under sentencing guidelines); *United States v. Jones*, No. 01-457-GMS, 2001 WL 1555262 at *8 (D. Del. Dec. 3, 2001) (same).

D.

Finally, defendant complains that she was coerced and intimidated by her appellate lawyer, Assistant FPD Jason Hawkins, into dismissing her appeal. The only factual support for this argument is two emails sent to defendant advising that she could be resentenced as an Armed Career Criminal in the unlikely event she prevailed on appeal and the case was remanded for another sentencing hearing. (*See* Def. Mot., Exh. 7 & Exh. 8 at 2-3, ¶ 11-16). In his first email, Hawkins stated "it appears to me that you qualify as an Armed Career Criminal Enhancement under 18 U.S.C. § 924(e)." (*Id.*, Exh. 7).[5] When defendant questioned whether her 1984 conviction for involuntary manslaughter, for which she was sentenced to five years probation, qualified as a "violent felony" under the Armed Career Criminal statute, Hawkins responded:

---

[4] The court notes that even after Amendment 709, "[p]rior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e. the defendant is arrested for the first offense prior to committing the second offense)." U.S.S.G. § 4A1.2(a)(2) (2007).

[5] Section 924(e) provides, in pertinent part:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

18 U.S.C. § 924(e)(1).

> Look at it through the eye of a prosecutor. Do you really think some baby prosecutor wouldn't mind making a name for him or herself by having a published case from the Fifth Circuit declaring that involuntary manslaughter is a crime of violence? They don't care about you as a person. All they see is a person who has a felony conviction for causing someone's death, has three felony convictions involving drugs, one felony conviction for credit card abuse and one felony conviction for possession of a counterfeit license. In addition, they see you have five other arrests involving this same type of behavior. You are another statistic to them and a chance at a promotion.
>
> Do not take the chance that you could have your sentence raised from 97 months to 180 months. If it is remanded it is a possibility and one you should not take. The chance of any reduction in your sentence based upon the loss of acceptance of responsibility or the sentence being unreasonable is zero. The possibility that you are actually qualify [sic] for a 15 year mandatory minimum is much greater than zero.
>
> Once again, I am advising you to allow me to withdraw your appeal.

(*Id.*).[6] On August 22, 2007, seven weeks after Hawkins sent his second email, defendant signed the motion to voluntarily dismiss her appeal. (Gov't Resp. App., Exh. D).

Notwithstanding his questionable characterization of the prosecutor's motives, the advice given by Hawkins was legally sound and far from coercive. Defendant had no legitimate basis on which to appeal her conviction and sentence. Even if her appeal was successful, there was a real possibility that defendant might be resentenced as an Armed Career Criminal. In that event, defendant would face a mandatory minimum 15-year sentence instead of the 97-month sentence she is currently serving. On these facts, there is no basis for the court to conclude that defendant's decision to withdraw her appeal was the result of coercion or intimidation.

---

[6] Although the Fifth Circuit has not yet decided whether a prior conviction for involuntary manslaughter is a "violent felony" under the Armed Career Criminal statute, 18 U.S.C. § 924(e), at least two other circuit courts have determined that such a conviction may be considered for enhancement purposes under the statute. *See, e.g. United States v. Sanders*, 97 F.3d 856, 859-60 (6th Cir. 1996), *cert. denied*, 117 S.Ct. 995 (1997); *United States v. Williams*, 67 F.3d 527, 528-29 (4th Cir. 1995).

## **RECOMMENDATION**

Defendant's motion to correct, vacate, or set aside sentence should be denied.

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party may file written objections to the recommendation within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). The failure to file written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: December 3, 2008.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE